UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ROBERT WAYNE BISHOP, | ) | Civil Action No.: 4:10-cv-1833-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| JOVAN S. VAZQUEZ and THE CITY OF | ) | |
| NORTH CHARLESTON; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.   INTRODUCTION

Plaintiff, who is proceeding pro se in this action, alleges causes of action under 42 U.S.C. § 1983 for unlawful seizure, excessive force, deliberate indifference to serious medical needs, and obstruction of justice.  Presently before the Court is Defendants' Motion for Summary Judgment (Document # 32).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendants' Motion could result in a recommendation that the Motion be granted.  Plaintiff timely filed a Response (Document # 39). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.  Because the present Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

## II.   FACTS

Plaintiff sets forth in his Complaint (Document # 1), that on August 13, 2008, he went through the drive-thru at Kentucky Fried Chicken on Rivers Avenue in North Charleston, South Carolina to purchase some food.  Complaint p. 4.  After he left Kentucky Fried Chicken, he proceeded down Rivers Avenue and moved into the turn lane for Remount Road. Id.  While waiting to turn left onto Remount Road, Plaintiff noticed a North Charleston Police Department patrol car

behind him, but it did not have its blue lights activated. Id. Plaintiff then turned left on Remount Road and the officer in the patrol car followed and activated the blue lights after Plaintiff had traveled a few hundred feet. Id. Plaintiff pulled into the center lane and stopped. Id. Defendant Jovan S. Vazquez exited the patrol car and informed Plaintiff that he was stopped randomly because he was driving through a high drug trafficking area. Id. Vazquez then ordered Plaintiff out of the vehicle. Id. Plaintiff informed Vazquez that his seatbelt sticks and that it would take a few moments to unlatch. Id. Seconds later, Vasquez reached into Plaintiff's vehicle, cut the seatbelt with a knife, and forcibly removed Plaintiff from the vehicle. Id. p. 5. Plaintiff offered no resistance, but Vazquez pushed Plaintiff face-first onto the pavement. Id. Vazquez pressed his knees into Plaintiff's neck, shoulders and back while pulling Plaintiff's arms backwards to handcuff him. Id. Vazquez then flipped Plaintiff over and dragged him by his feet. Id.

Another North Charleston Police Officer, Daniele, arrived on the scene with his canine and allowed the dog to "nip" at Plaintiff, who sat in the road while handcuffed and bleeding from his nose and face. Id. Plaintiff overheard someone tell Vazquez that Plaintiff needed medical assistance. Id. p. 6. Vazquez then called Emergency Medical Services (EMS) and Plaintiff was treated at the scene. Id. An Emergency Medical Technician (EMT) informed Vazquez that Plaintiff needed to go to a hospital due to the severity of his injuries, but Vazquez told the EMT that the only place Plaintiff was going was jail. Id. Plaintiff was then transported to the detention facility. Id.

Upon arriving at the detention facility, medical staff examined Plaintiff and asked Vazquez to take him to the hospital. Id. Plaintiff was treated at the hospital and transported back to the detention center. Id. Plaintiff was charged with failure to stop for blue lights, resisting arrest, providing false information and driving under suspension–3rd. Id. Plaintiff was released from the detention center several days later after posting bond. Id.

As a result of the force used by Vazquez, Plaintiff suffered a broken nose, a broken tooth, and

a lacerated lip, all of which required surgery.  Id. p. 7-8.

Plaintiff retained an attorney to represent him on his criminal matters.  Id. p. 6.  During discovery, Plaintiff's counsel was unable to obtain a copy of the video taken by Vazquez's patrol car camera or any witness statements.  Id.  However, the video was provided to the prosecuting attorney for the City of North Charleston, who dismissed all charges against Plaintiff after viewing the video.  Id. p. 7.  Plaintiff submits a letter written to him by his attorney in which the attorney states, "As you know, I made the argument that the stop was unlawful, because the stop sign you were accused of running was on private property.  The North Charleston prosecutor agreed with me.  I do not have in my files a notation of the date when the prosecutor dismissed the case . . . ."  Letter from Terry Walker (attached to Plaintiff's Response).

Vazquez's version of the incident differs from Plaintiff's version.  Vazquez avers that on August 13, 2008, at approximately 11:18 p.m., while on patrol for drug activity, he saw a man walk up to a red pick-up truck and then walk away.  Vazquez Aff. ¶ 2; Incident Report.  Vazquez followed the truck through the rear of a KFC restaurant and onto Rivers Avenue.  Vazquez Aff. ¶ 3; Incident Report.  When the driver failed to use his turn signal[1], Vazquez activated his blue light, but the truck continued westbound on Rivers Avenue.  Id.  The truck then made a U-turn and headed eastbound on Rivers Avenue toward Remount Road.  Vazquez Aff. ¶ 4.; Incident Report.  Because the driver had not stopped for the blue light, Vazquez alerted dispatch and activated his siren.  Id.  The driver increased his speed and merged into the turning lane for Remount Road.  Id.  As they approached

---

[1]Relying on the statement by his attorney in a letter dated June 28, 2010, that Plaintiff was accused of running a stop sign, Plaintiff argues that Vazquez changed his story about the traffic violation that led to the traffic stop by first stating that he ran a stop sign and later stating that he failed to use his turn signal.  See Plaintiff's Response p. 2.  However, in the Incident Report, Vazquez states that he first activated his blue lights when Plaintiff failed to use his turn signal.  The record is void of any mention by Vazquez or any indication of a charge that Plaintiff ran a stop sign on August 13, 2008.

a red light, Vazquez used his PA system to instruct the driver to put the truck in park, but when the light turned green, the driver continued forward and turned onto Remount Road. Vazquez Aff. ¶ 5; Incident Report.

Due to heavy traffic caused by a crossing train, the driver finally stopped. Id. Vazquez exited his patrol car, drew his gun and pointed it towards the driver, who Vazquez later learned was Plaintiff. Id. Vazquez instructed Plaintiff to place both hands outside the window, which he did. Vazquez Aff. ¶ 6; Incident Report. Vazquez then ordered Plaintiff to exit the truck and he again complied.[2] Id. Vazquez instructed Plaintiff to walk towards the patrol car, stop, and lie on the ground. Id. When Plaintiff refused, Vazquez again ordered him to lay on the ground. Id. Plaintiff continued to refuse to lie on the ground, so Vazquez physically placed him on the ground with an "arm-bar" take down. Vazquez Aff. ¶ 8; Incident Report. Plaintiff refused to give Vazquez his hands so that he could restrain him, so Daniele, the other officer on the scene, ordered Plaintiff to stop resisting or he would have to release his canine. Id. Plaintiff then gave Vazquez both of his hands and he was placed under arrest. Id.

After Plaintiff was handcuffed, Vazquez notified dispatch to send EMS because Plaintiff had suffered a bloody nose when Vazquez forced him to the ground. Vazquez Aff. ¶ 10; Incident Report. Vazquez avers that he always calls for EMS when he has a suspect that is bleeding. Id. EMS arrived and cleared Plaintiff to be taken to jail. Id. Plaintiff identified himself as Robert Lee Bishop at that time. Id. At the Charleston County Detention Center, Plaintiff was photographed and fingerprinted. Vazquez Aff. ¶ 11; Incident Report. The prints came back to Robert Wayne Bishop. Id. Vazquez confirmed Plaintiff's identity as Robert Wayne Bishop by matching him to another recent jail photograph. Id.

---

[2] Vazquez avers that he does not carry a knife on patrol and did not cut Plaintiff's seatbelt. Vazquez Aff. ¶ 7.

Due to his bloody nose, the jail intake nurse asked Vazquez to take Plaintiff to the hospital for possible treatment of a broken nose. Vazquez Aff. ¶ 13; Incident Rport. After a lengthy stay in the emergency room due to Plaintiff's high blood alcohol level, Plaintiff was again treated and released for jail. Vazquez Aff. ¶ 13. Vazquez avers that Plaintiff was very intoxicated at the time of his arrest, but because Vazquez was not a certified DUI officer at that time, he did not examine him for a DUI charge. Id. ¶ 9.

Plaintiff was booked at the detention center at 4:47 a.m. on August 14, 2008. Booking Report. He was released on a surety bond at 3:14 p.m. the same day. Commitment Form.

City Prosecutor, Timothy Amey, avers that Plaintiff is incorrect regarding the disposition of the charges arising out of this incident. Amey Aff. ¶ 5. Some of his charges were nolle prossed due to pending charges in General Sessions Court. Id. The prosecutor's[3] notes on the docket sheet read "NP-GSC (Related Charge)." February 13, 2009, Pre-trial Docket Sheet. At the time of the disposition of Plaintiff's municipal charges, he faced the following felony charges: two counts of financial transaction card forgery, one count of financial transaction card fraud (greater than $500.00), and one count of financial identity fraud. Amey Aff. ¶ 6. It is the City of North Charleston's standard practice to dismiss certain municipal charges when a criminal defendant faces greater charges in Circuit Court. Id. Plaintiff eventually received 365-day sentences on two of the fraud charges. Id. Plaintiff's charge for failure to stop for a blue light was not nolle prossed. Id. ¶ 7. For the warrant on that charge (79619EN), Bishop was convicted of reckless driving on February 20, 2009. Id.; SLED CATCH p. 7.

The City Prosecutor also searched for a videotape of the events leading up to and including Plaintiff's arrest on August 13, 2008, but found no such tape. Amey Aff. ¶ 2. He also searched the

---

[3] Plaintiff's August 13, 2008, charges were handled by Dale DuTremble, who has since passed away. Amey Aff. ¶ 5.

City's digital archive system for any recording of the incident. Id. ¶ 3. Amey avers that depending upon the type of camera in an officer's patrol car, some recordings are archived in digital format. Id. Generally, recordings are maintained for ninety days. Id. If a recording of the incident at issue had been put into the digital archive system, it would no longer be in the system since the arrest occurred in 2008 and the charges were disposed of in February of 2009. Id.

### III.  STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Municipal Liability

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that the alleged violation was committed by a person acting under the color of state law, and (2) that a right secured by the Constitution or laws of the United States was violated. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Municipalities and other local governing bodies are also included among those "persons" who may be sued under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a county or city cannot be liable under § 1983 pursuant to respondeat superior principles. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999) ("municipalities are not liable pursuant to respondeat superior principles for all constitutional

violations of their employees simply because of the employment relationship") (citing Monell, 436 U.S. at 692-94). In other words, a municipality may not be held liable under § 1983 solely because it employs the tortfeasor; rather, a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury. Board of County Commissioners v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). See also McMillian v. Monroe County, Alabama, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ("If the sheriff's actions constitute county 'policy,' then the county is liable for them."); Knight v. Vernon, 214 F.3d 544, 552-53 (4th Cir.2000).

Plaintiff alleges that the City of North Charleston violated his constitutional rights by "tolerating a custom or unofficial policy or practice that results in unconstitutional seizures and excessive use of force by its employees" and "unconstitutional suppression of evidence during criminal prosecutions." Complaint p. 9. In support of these claims, Plaintiff submits two[4] disciplinary records for Vazquez regarding events separate from the incident at issue here. See Disciplinary Action (IN2008-029) (attached as Exhibit 4 to Plaintiff's Response) and Disciplinary Action (IN2007-119) (attached as Exhibit 5 to Plaintiff's Response). Plaintiff argues that these records show that Vazquez has "repeatedly violated policy, procedure, civil rights, amendments, etc. . . . all of which has been tolerated and allowed to continue by the City of North Charleston Police Department." Response (Document # 39) p. 3. However, the first incident, which occurred on November 25, 2007, involved Vazquez's fourth at-fault motor vehicle accident in six months, and Vazquez received a 24 hour suspension by forfeiting 24 hours of annual leave, removal of the radio and any other electronic/entertainment device from his patrol car and prohibition from possessing

---

[4]Plaintiff also submits a third exhibit entitled "North Charleston Police Department Administrative Internal Investigation," which is one page of what appears to be a multi-page document. North Charleston Police Department Administrative Internal Investigation (attached as Exhibit 6 to Plaintiff's Response). However, it is unclear from what was submitted to the Court whether the document pertains to Vazquez. Vazquez's name appears on the document only as a handwritten notation.

a cell phone in his patrol car while on duty. Disciplinary Action (IN2007-119). The second incident, which occurred on June 3, 2008, involved Vazquez's failure to appear for a preliminary hearing, and he received a written reprimand. Thus, not only do the records appear to show a lack of tolerance for Vazquez's actions, the incidents are not related or similar to the allegations in this case.

In sum, the documents submitted by Plaintiff fail to support his allegations that the City of North Charleston held any sort of policy or custom regarding the use of excessive force, unconstitutional seizures or suppression of evidence, and Plaintiff has otherwise failed to submit evidence to support such a claim. Therefore, because Plaintiff has failed to create a genuine dispute of material fact regarding the City of North Charleston's municipal liability, summary judgment is appropriate on the claims against the City.

### B.     Unlawful Seizure

Plaintiff alleges that Vazquez's stop of his vehicle was an unlawful seizure because he lacked probable cause for the stop. The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (citation, quotation, and emphasis omitted). "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (citation omitted); see also Berkemer v. McCarty, 468 U.S. 420, 436–37, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (same); Colorado v. Bannister, 449 U.S. 1, 4 n. 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) (per curiam) (same).

Plaintiff's claim for unlawful seizure is barred by the holding in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based. The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, ... a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

Plaintiff asserts that all charges against him arising out of the traffic stop at issue here were dropped by the city prosecutor. However, the current city prosecutor, Amey, avers that on the warrant charging Plaintiff with failure to stop for a blue light, Plaintiff was convicted for reckless driving. The SLED CATCH supports Amey's averment.[5] There is no evidence in the record that the conviction has been reversed, expunged or otherwise invalidated. A finding by this court that Vazquez lacked probable cause to stop Plaintiff would necessarily imply the invalidity of Plaintiff's conviction for reckless driving. Therefore, Plaintiff's claim of unlawful seizure is barred by Heck and should be dismissed.

---

[5]The SLED CATCH shows that Plaintiff was charged with "Fail to Stop for Blue Light" on warrant number 79619EN. On that same warrant, Plaintiff was convicted of "Reckless Driving." SLED CATCH p. 7.

  C. **Excessive Force**

  Protection against force during arrest is provided by the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). All claims of use of excessive force during an investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in the arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to the circumstances of a particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396; Foote v. Dunagan, 33 F.3d 445 (4th Cir.1994). The focus is on reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

  Defendants liken the present case to Revely v. City of Huntington, No. 3:07-0648, 2009 WL 1097972 (S.D.W.Va. Apr. 23, 2009). In Revely, the plaintiff, who was driving a car with out-of-state plates, noticed a patrol car following him and purposefully drove through some alleys to determine if the officer indeed was following him. Id. at *1. Approximately fifty yards from the plaintiff's home, just prior to an intersection, the officer turned on his flashing lights. Id. The plaintiff stopped at the intersection, made a turn, and then proceeded into his own driveway, two houses from the intersection. Id. Both the officer and the plaintiff exited their vehicles in the plaintiff's driveway. Id. at *2. The plaintiff was holding his keys in his right hand and moved to put

them in his pocket. Id. Because he was nervous, he fidgeted with his hand in his pocket. Id. The plaintiff testified that he had one hand in the air at all times and both hands in the air after he let go of his keys. Id. The plaintiff began walking slowly toward the officer, and the officer charged at him, spraying Capstun, a mace-like substance, into his face from approximately two feet away. Id. The officer then kicked the plaintiff in the back, bringing him to his knees. Id. The officer stepped on the plaintiff's back to place him prostrate and put him in handcuffs. Id. The plaintiff did not physically resist. Id. The court held that the plaintiff failed to demonstrate that the officer used an unreasonable amount of force against him, noting that the plaintiff's evasive driving through the alleys, failure to stop immediately once blue lights were activated, and fidgeting hands while approaching the officer led the officer to reasonably believe that the plaintiff was a threat and/or likely to flee. Id. at *3.

The facts in the present case are in dispute. When viewed in the light most favorable to Plaintiff, the facts reveal that Plaintiff was following all traffic laws, pulled his vehicle over shortly after Vazquez activated his blue lights and attempted to exit his vehicle as directed by Vazquez. Before Plaintiff could remove his seatbelt, Vazquez cut off the seatbelt, pulled Plaintiff out of the car and threw him to the ground. Based upon these facts, a reasonable juror could conclude that the force used by Vazquez was unreasonable under the circumstances. Therefore, summary judgment is not appropriate on Plaintiff's excessive force claim.

### D.     Deliberate Indifference to Medical Needs

Plaintiff alleges that Vazquez was deliberately indifferent to his medical needs on August 13, 2008. Plaintiff argues that Vazquez did not call EMS to come to the scene until after a bystander indicated that Plaintiff needed medical attention. Plaintiff further argues that Vazquez ignored the EMT's opinion that Plaintiff needed further medical treatment and took him to the detention center

instead of directly to the emergency room.

The standard of medical care given to pre-trial detainees is governed by the due process clause of the Fourteenth Amendment rather than the Eight Amendment's prohibition against cruel and unusual punishment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); see Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, the inquiry as to whether a pre-trial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eight Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97, 104-106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "Pre-trial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs. Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir.1992) (citation omitted).

In Estelle, the Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Estelle, 429 U.S. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988) (citation omitted). Even though the provision of medical care by prison or jail officials is not discretionary, the type and amount of medical treatment is discretionary. See Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga.1994) (collecting cases).

Deliberate indifference is a very high standard. In Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless

medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. at 104; Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

Viewing the facts in the light most favorable to Plaintiff, Vazquez first failed to recognize Plaintiff's need for medical attention at the scene of the incident until a bystander notified him. However, once notified Vazquez called EMS. Vazquez's inattention to Plaintiff's medical needs does not rise to the level of deliberate indifference. At most, his inattention amounts to negligence, which does not suffice to state a constitutional violation. See Miltier, 896 F.2d at 851 (noting that deliberate indifference may be demonstrated by actual intent or reckless disregard but that mere negligence or medical malpractice does not suffice).

Plaintiff also asserts that Vazquez ignored the EMT's statement[6] that Plaintiff needed to go to the hospital due to the severity of his injuries and took him to the detention center instead. Once they arrived at the detention center, the medical personnel there informed Vazquez that Plaintiff needed to be taken to the emergency room. Vazquez took Plaintiff to the emergency room where he was examined and released and taken back to the detention center. Non-medical personnel such as Vazquez can be found to have acted with deliberate indifference if they intentionally delay an inmate's access to medical care. Wynn v. Mundo, 367 F.Supp.2d 832, 837 (M.D.N.C.2005) (citing Estelle, 429 U.S. at 104–05). However, an Eighth Amendment violation occurs only if the delay results in some substantial harm to the patient. See Webb v. Hamidullah, 281 Fed.Appx. 159, **7 (4th Cir.2008) (citing Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir.2000) ("Delay in medical

---

[6] The undersigned assumes for purposes of this motion, that the statements of the EMT and the bystander are admissible.

-14-

care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990) (same)). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir.2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware].").[7] Plaintiff has failed to present sufficient evidence to show any constitutionally violative delay in the provision of his medical care. Vazquez contacted EMS for treatment at the scene and transported him to the emergency room upon further examination at the detention center. It appears from the medical documents submitted by Plaintiff that he was examined in the emergence room, prescribed pain medication, and discharged with instructions to "follow-up with Charleston ENT Associates for evaluation of the nasal fracture." Medical Documents (Document # 27). The facts fail to show any more than a slight delay between examination by the EMT and transport to the emergency room. Also, no evidence suggests any harm from the delay.

---

[7]At least two judges in this district have relied upon Blackmore in holding that a plaintiff does not have to show a detrimental effect of the delay in medical treatment to establish a constitutional violation. See, e.g., Gibson v. Laurens County Detention Center, No. 2:10-2132-RBH-BHH, 2011 WL 3903061, *6 (D.S.C. Jun 14, 2011) (Report and Recommendation); Robinson v. South Carolina Dept. of Corrections, No. 4:10-157-HMH, 2011 WL 692210, *4 (D.S.C. Feb 17, 2011). Under Blackmore, "it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Blackmore, 390 F.3d at 900. Even under this reasoning, Plaintiff's claim fails. Any delay in being taken to the emergency room was minimal, given that Plaintiff was arrested at approximately 11:25 p.m. and booked at the detention center at 4:47 a.m. after he was seen in the emergency room. See Incident Report; Booking Report. A delay of a few hours under these circumstances does not rise to the level of a constitutional violation. Cf. Id. (finding an issue of fact whether the defendants were deliberately indifferent to the plaintiff's medical needs where plaintiff's medical treatment was delayed for two days); Gibson, 2011 WL 3903061, *6 (delay of five days); Robinson, 2011 WL 692210, *4 (delay of three days).

In sum, Plaintiff has failed to show that his injuries were serious or life threatening, or that Vazquez was deliberately and intentionally indifferent to his medical needs. Accordingly, summary judgment is appropriate on Plaintiff's claim of medial indifference.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's claim for unlawful seizure be dismissed pursuant to Heck. Further, it is recommended that Defendants' Motion for Summary Judgment (Document # 32) be granted in part and denied in part. Specifically, it is recommended that summary judgment be granted as to all of Plaintiff's claims against the City of North Charleston and his claim against Vazquez for deliberate indifference to serious medical needs, and that summary judgment be denied as to Plaintiff's claim against Vazquez for excessive force.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 14, 2011
Florence, South Carolina

**The parties are directed to the important information on the following page.**